# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNILOC 2017, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| VUDU, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Uniloc 2017 LLC ("Uniloc"), by and through the undersigned counsel, hereby brings this action and makes the following allegations of patent infringement relating to U.S. Patent Nos. 8,407,609 (the "'609 patent"), 6,895,118 (the "'118 patent"), and 6,519,005 (the "'005 patent") (collectively "the Asserted Patents") against Defendant Vudu, Inc. ("Vudu") and alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.     This is an action for patent infringement.  Uniloc alleges that Vudu has infringed and/or is infringing one or more of the '609 patent, the '118 patent, the '005 patent, copies of which are attached as Exhibits A-C, respectively.

2.     Uniloc alleges that Vudu directly infringes and/or has infringed the Asserted Patents by making, using, offering for sale, selling, and/or importing various products and services that:  (1) products that perform a method for tracking digital media presentations delivered from a first computer system to a user's computer via a network, (2) perform a method of coding a digital

image comprising macroblocks in a binary data stream and (3) perform a method for providing content via a computer network and a computer system.  Uniloc seeks damages and other relief for Vudu's infringement of the Asserted Patents.

## THE PARTIES

3.      Plaintiff Uniloc 2017 is a Delaware corporation with addresses at 1209 Orange Street, Wilmington Delaware, 19801 and 620 NewPort Center Drive, Newport Beach California and .

4.      Upon information and belief, Vudu is a Delaware corporation with a place of business at 600 W. California Avenue, Sunnyvale, California 94086.  Vudu may be served through its registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

5.      This action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. § 1 et. seq.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338.

6.      This Court has both general and specific personal jurisdiction over Vudu because Vudu is a Delaware corporation that has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Vudu would not offend traditional notions of fair play and substantial justice.  Vudu directly and through subsidiaries and intermediaries (including distributors, retailers, franchisees and others), has committed and continues to commit acts of infringement in this District by, among other things, making, using, testing, selling, importing, and/or offering for sale products that infringe the Asserted Patents.

7.      Venue is proper in this District and division under 28 U.S.C. §§1391(b)-(d) and 1400(b) because Vudu is incorporated in this District, transacts business in this District and has committed and continues to commit acts of direct and indirect infringement in this District.

## COUNT I:  INFRINGEMENT OF THE '609 PATENT

8.      The allegations of paragraphs 1-7 of this Complaint are incorporated by reference as though fully set forth herein.

9.      The '609 patent, titled "System and Method For Providing And Tracking The Provision Of Audio And Visual Presentations Via A Computer Network" issued on March 26, 2013.  A copy of the '609 patent is attached as Exhibit A.

10.      Pursuant to 35 U.S.C. § 282, the '609 patent is presumed valid.

11.      Invented by LINQware, Inc., the inventions of the '609 patent were not well-understood, routine or conventional at the time of the invention.  At the time of invention of the '609 patent, it was very difficult for a user of an Internet enabled computer to find content of a particular type and relating to a particular subject because the amount of content available via the Internet was virtually unlimited.  '609 patent at 1:50-54.  A popular solution to finding desired content was to use a publicly available search engine.  *Id.* at 1:55-56.  Each search engine typically used its own methodology to create indices such that, ideally, only meaningful results are returned for each query.  *Id.* at 1:62-64.  This was not always true though due to the complex nature and nuances of human language and efforts by document authors or providers to fool or trick the indexer into ranking its documents above those of others.  *Id.* at 1:64-2:1.  Examples of conventional search engines include those made available via www.yahoo.com, www.google.com and www.search.com.  *Id.* at 2:1-3.

12.      The inventive solution of the claimed inventions of the '609 patent provides a method whereby digital media presentations are delivered and tracked from a first computer system to a user's computer via a network in a manner that departs from convention.  *Id.* at 2:13-15.  In accordance with one aspect of the invention, a web page, identifier data and an applet are

provided to the user's computer for each digital media presentation to be delivered using the first computer system. *Id.* at 2:15-21. The applet is operative by the user's computer as a timer. *Id.* at 2:21-22. The first computer system receives at least a portion of the identifier data from the user's computer responsively to the timer applet each time a predetermined temporal period elapses and stores data indicative of the received at least portion of the identifier data. *Id.* at 2:22-27. Each provided webpage causes corresponding digital media presentation data to be streamed from a second computer system distinct from the first computer system directly to the user's computer independent of the first computer system. *Id.* at 2:27-31. The stored data is indicative of an amount of time the digital media presentation data is streamed from the second computer system to the user's computer. *Id.* at 2:31-34.

13.     A person of ordinary skill in the art reading the '609 patent and its claims would understand that the patent's disclosure and claims are drawn to solving a specific, technical problem arising in delivering and tracking digital media presentations via a network. Moreover, a person of ordinary skill in the art would understand that the claimed subject matter of the '609 patent presents advancements in the field of the provision of informational, entertainment, educational, business and other audio and/or audio/visual presentations via a computer network. And, as detailed by the specification, the prior search engines suffered drawbacks such that a new and novel communications system was required.

14.     In light of the foregoing, a person of ordinary skill in the art would understand that claim 1 of the '609 patent is directed to a specific method for providing and tracking digital media presentations using a web page, identifier data and a timer applet originating at a first computer to track and responsively stream a digital media presentation from a second computer that can be viewed by a user at the user's computer. *Id.* at 14:17-45. Moreover, a person of ordinary skill in the art would understand that claim 1 of the '609 patent contains the inventive concept of providing and tracking digital media presentations using a web page, identifier data and a timer applet originating at a first computer to track and responsively stream a digital media presentation from a second computer that can be viewed by a user at the user's computer.

15.     Upon information and belief, Vudu makes, uses, offers for sale, and/or sells in the United States and/or imports into the United States products and services that perform a method for tracking digital media presentations delivered from a first computer system to a user's computer via a network (collectively the "`609 Accused Infringing Devices").

16.     Upon information and belief, the `609 Accused Infringing Devices infringe at least claim 1 in the exemplary manner described below.

17.     The `609 Accused Infringing Devices track digital media presentations delivered from a first computer system to a user's computer via a network.  In particular, among other things, the `609 Accused Infringing Devices identify the media content that the user is currently watching and tracks the user's viewing progress.  The Vudu website is hosted on the first computer and is delivered to a user's computer over the Internet.

18.     The `609 Accused Infringing Devices provide a corresponding web page to the user's computer for each digital media presentation to be delivered using the first computer system.  For example, the webpage located at https://www.vudu.com/content/movies/details/Wild-Wild-West/9277 corresponds to the "Wild Wild West" movie.



19.    The `609 Accused Infringing Devices provide identifier data to the user's computer using the first computer system.  The `609 Accused Infringing Devices require users to log in to access the service, including watching video-on-demand programs.



20.    The `609 Accused Infringing Devices provide an applet to the user's computer for each digital media presentation to be delivered using the first computer system.  The Vudu website provides a media player that keeps track of the user's progress using a timer.



21.     The `609 Accused Infringing Devices receive at least a portion of the identifier data from the user's computer responsively to the timer applet each time a predetermined temporal period elapses using the first computer system.  The `609 Accused Infringing Devices maintain a viewing history for each user.  The viewing history is updated continuously, even the absence of user input such as pressing a pause button or exit button.  For example, if the user closes and reopens the website, the program will resume just prior to the point where the user closed the webpage.  It also displays a message that the program is resuming where the user left off.  This indicates that the user's computer sends periodic updates at regular intervals to inform the `609 Accused Infringing Devices of the user's current position, thus reflecting the use of a timer.





22.    The `609 Accused Infringing Devices store data indicative of the received at least a portion of the identifier data using the first computer system.  The user's viewing history, updated every time an updated position is sent, is stored by Vudu.  For example, the "Wild Wild West" page displays a progress bar that is updated as the user watches more of the program.



23.     Each provided webpage causes corresponding digital media presentation data to be streamed from a second computer system (*e.g.*, the content delivery network, *e.g.*, Akamai), distinct from the user's computer independent of the first computer system (*e.g.*, the Vudu website).

24.     This screenshot from Chrome Developer tools shows the requests to and responses from an Akamai server for a particular segment of the "Wild Wild West" movie.



25.     The stored data is indicative of an amount of time the digital media presentation is streamed from the second computer system to the user's computer.  The stored data indicates the duration and position of the user's current position, which indicates the amount of time the presentation has been streamed to the user's computer by the CDN.

26.     Each stored data is together indicative of a cumulative time the corresponding web page was displayed by the user's computer.  The amount of time the user spends watching a movie is tracked by Vudu and also reflects the amount of time the corresponding Vudu webpage was displayed by the user's computer.

27.     Vudu has thus infringed at least claim 1 of the '609 patent by making, using, testing, selling, offering for sale, importing and/or licensing the `609 Accused Infringing Devices, and operating them such that all steps of at least claim 1 are performed.

28.     Vudu's acts of direct infringement have caused damage to Uniloc, and Uniloc is entitled to recover damages sustained as a result of Vudu's wrongful acts in an amount subject to proof at trial.

## COUNT II:  INFRINGEMENT OF THE '118 PATENT

29.     The allegations of paragraphs 1-7 of this Complaint are incorporated by reference as though fully set forth herein.

30.     The '118 patent, titled "Method Of Coding Digital Image Based on Error Concealment," issued on May 17, 2005.  A copy of the '118 patent is attached as Exhibit B.

31.     Pursuant to 35 U.S.C. § 282, the '118 patent is presumed valid.

32.     Invented by Koninklijke Philips Electronics N.V., the inventions of the '118 patent were not well-understood, routine or conventional at the time of the invention.  The specification discloses previous work done to reduce the amount data required to send a video stream by intentionally dropping certain image blocks, and then concealing the lost blocks through the use of spatial interpolation. '118 patent at 1:14-32.  The publication referenced in the specification

describes how a JPEG coder can be modified to intentionally drop image blocks that can be reasonably reconstructed from neighboring transmitted blocks. The schemes described therein achieved data reduction by replacing dropped blocks with constant value blocks, or by modifying block addressing information to communicate the addresses of the dropped blocks. *Id.* at 1:21-32.

33.     The inventors observed that block information could be dropped altogether, simulating lost data in the video stream, but for the synchronization issues such data dropping can cause at the decoder. MPEG-4, a more modern coding standard than JPEG or MPEG-1, contained a new mechanism to recover from lost data through periodically inserted resynchronization markers. *Id.* at 1:35-42. One aspect of the invention was to selectively combine block dropping with resynchronization markers to enable more efficient compression. The inventors include a step in their invention to evaluate the potential data savings of dropping a block or blocks relative to the overhead of the resynchronization markers. *Id.* At 2:11-27. In addition to spatial reconstruction of dropped blocks, the inventors furthermore incorporated the additional mechanism of temporal interpolation to support reconstruction of dropped blocks, using motion vector information from neighboring blocks. *Id.* at 3:19-28.

34.     A person of ordinary skill in the art reading the '118 patent and its claims would understand that the patent's disclosure and claims are drawn to solving a specific, technical problem arising in achieving more efficient video compression. Moreover, a person of ordinary skill in the art would understand that the claimed subject matter of the '118 patent presents advancements in the field of digital image coding. And, as detailed by the specification, the prior tools for reducing compressed video data rates was such that a new and novel approach was required.

35.     In light of the foregoing, a person of ordinary skill in the art would understand that claim 1 of the '118 patent is directed to a method of coding a digital image comprising macroblocks in a binary data stream.  *Id.* at 8:2-3.   Moreover, a person of ordinary skill in the art would understand that claim 1 of the '118 patent contains the inventive concept of (1) an estimation step, for macroblocks, of a capacity to be reconstructed via an error concealment method, (2) a decision step for macroblocks to be excluded from the coding, a decision to exclude a macroblock from coding being made on the basis of the capacity of such macroblock to be reconstructed, and (3) a step of inserting a resynchronization marker into the binary data stream after the exclusion of one or more macroblocks.  *Id.* at 8:4-12.

8.     Upon information and belief, Vudu makes, uses, offers for sale, and/or sells in the United States and/or imports into the United States products and services such as H.264 encoders that practice a method for coding a digital image comprising macroblocks in a binary data stream (collectively the "`118 Accused Infringing Devices").

9.     Upon information and belief, the `118 Accused Infringing Devices infringe at least claim 1 in the exemplary manner described below.

10.     The `118 Accused Infringing Devices use H.264 (AVC) streams for coding video data (digital images) including macroblocks embedded in a binary stream.

11.     H.264 is a widely used video compression format with decoder support on web browsers, TVs and other consumer devices. Moreover, H.264 codes digital images comprising macroblock streams.

12.     The `118 Accused Infringing Devices receive input video streams which are then encoded and/or transcoded using at least the H.264 standard.   This is a widely used video

compression format with decoder support on web browsers, TVs and other consumer devices. Moreover, H.264 uses motion compressor and estimator for motion coding video streams.

Today, VUDU uses both Limelight and Akamai to deliver their videos to third party devices and encodes all of their content in H.264 for SD, HD and VUDU's proprietary HDX quality. For each quality classification, VUDU is doing multiple encodes which takes advantage of their own in-house adaptive streaming technology for the delivery. SD quality videos are encoded at 1Mbps, 1.5Mbps and 2Mbps. 720p HD content is encoded at 2.25Mbps, 3.75mbps and 4.5Mbps. 1080p HDX videos are encoded at 4.5Mbps, 6.75Mbps and 9Mbps. While VUDU encodes using the H.264 standard, they spend a lot of time to optimize their videos by using an open-source video encoding platform that they have made a lot of modifications to. This is one of the reasons why people who use VUDU, including myself, think they have the best looking videos today. To me, VUDU's 1.5Mbps stream looks much better quality wise, than Netflix's 1.5Mbps stream and has some of the fastest start times I have seen, outside of 1080p streaming on the Xbox 360.

**Source:** https://www.businessinsider.com/everything-you-need-to-know-about-vudu-2010-3

This Recommendation | International Standard was developed in response to the growing need for higher compression of moving pictures for various applications such as videoconferencing, digital storage media, television broadcasting, internet streaming, and communication. It is also designed to enable the use of the coded video representation in a flexible manner for a wide variety of network environments. The use of this Recommendation | International Standard allows motion video to be manipulated as a form of computer data and to be stored on various storage media, transmitted and received over existing and future networks and distributed on existing and future broadcasting channels.

**Source**: https://www.itu.int/rec/T-REC-H.264-201704-I/en , p. i

As in previous video coding Recommendations and International Standards, a macroblock, consisting of a 16x16 block of luma samples and two corresponding blocks of chroma samples, is used as the basic processing unit of the video decoding process.

A macroblock can be further partitioned for inter prediction. The selection of the size of inter prediction partitions is a result of a trade-off between the coding gain provided by using motion compensation with smaller blocks and the quantity

**Source:** https://www.itu.int/rec/T-REC-H.264-201704-I/en, section 0.6.3

---

### Annex B

### Byte stream format

(This annex forms an integral part of this Recommendation | International Standard.)

---

This annex specifies syntax and semantics of a byte stream format specified for use by applications that deliver some or all of the NAL unit stream as an ordered stream of bytes or bits within which the locations of NAL unit boundaries need to be identifiable from patterns in the data, such as Rec. ITU-T H.222.0 | ISO/IEC 13818-1 systems or Rec. ITU-T H.320 systems. For bit-oriented delivery, the bit order for the byte stream format is specified to start with the MSB of the first byte, proceed to the LSB of the first byte, followed by the MSB of the second byte, etc.

---

**Source**: https://www.itu.int/rec/T-REC-H.264-201704-I/en, Annex B

13.     H.264 coding in the `118 Accused Infringing Devices supports skipped macroblocks. Before a macroblock is coded, an estimation is made of whether that macroblock can be reconstructed with an error concealment method by examining its motion characteristics, and checking to see that the resulting prediction contains no non-zero (i.e. all zero) quantized transform coefficients. This estimation provides an indication of the capacity for the macroblock to be reconstructed from properties of neighboring macroblocks, allowing the missing block to be concealed by inferring its properties.

- 14 -

> **Skipped Mode:**
> In addition to the macroblock modes described above, a P-slice macroblock can also be coded in the so-called skip mode. If a macroblock has motion characteristics that allow its motion to be effectively predicted from the motion of neighboring macroblocks, and it contains no non-zero quantized transform coefficients, then it is flagged as skipped. For this mode, neither a quantized prediction error signal nor a motion vector or reference index parameter are transmitted. The reconstructed signal is computed in a manner similar to the prediction of a macroblock with partition size 16 × 16 and fixed reference picture index equal to 0. In contrast to previous video coding standards, the motion vector used for reconstructing a skipped macroblock is inferred from motion properties of neighboring macroblocks rather than being inferred as zero (i.e., no motion).

**Source:** http://mrutyunjayahiremath.blogspot.com/2010/09/h264-inter-predn.html

    14.    H.264 encoders in the `118 Accused Infringing Devices perform a decision step to determine if a macroblock should be excluded from coding (skipped), with the decision to exclude made on the basis of its capacity to be reconstructing by inferring its motion properties from neighboring macroblocks, and based on all zero quantized transform coefficients.

> **Skipped Mode:**
> In addition to the macroblock modes described above, a P-slice macroblock can also be coded in the so-called skip mode. If a macroblock has motion characteristics that allow its motion to be effectively predicted from the motion of neighboring macroblocks, and it contains no non-zero quantized transform coefficients, then it is flagged as skipped. For this mode, neither a quantized prediction error signal nor a motion vector or reference index parameter are transmitted. The reconstructed signal is computed in a manner similar to the prediction of a macroblock with partition size 16 × 16 and fixed reference picture index equal to 0. In contrast to previous video coding standards, the motion vector used for reconstructing a skipped macroblock is inferred from motion properties of neighboring macroblocks rather than being inferred as zero (i.e., no motion).

**Source:** http://mrutyunjayahiremath.blogspot.com/2010/09/h264-inter-predn.html

    15.    Skipped macroblocks are communicated with a mb_skip_flag = 1 (resynchronization marker at the point where the macroblocks are not coded (skipped)) in the binary data stream.

| **3.139** | **skipped macroblock**: A *macroblock* for which no data is coded other than an indication that the *macroblock* is to be decoded as "skipped". This indication may be common to several *macroblocks*. |
|---|---|

**Source**: https://www.itu.int/rec/T-REC-H.264-201704-I/en, p13

| **3.139** | **skipped macroblock**: A *macroblock* for which no data is coded other than an indication that the *macroblock* is to be decoded as "skipped". This indication may be common to several *macroblocks*. |
|---|---|

**Source**: https://www.itu.int/rec/T-REC-H.264-201704-I/en, p13



**Source**: https://www.safaribooksonline.com/library/view/the-h264
advanced/9780470516928/ch05.html#macroblock_layer

    16.    Vudu has thus infringed at least claim 1 of the '118 patent by making, using, testing, selling, offering for sale, importing and/or licensing the `118 Accused Infringing Devices, and operating them such that all steps of at least claim 1 are performed.

    17.    Vudu's acts of direct infringement have caused damage to Uniloc, and Uniloc is entitled to recover damages sustained as a result of Vudu's wrongful acts in an amount subject to proof at trial.

## COUNT III:  INFRINGEMENT OF THE '005 PATENT

18.     The allegations of paragraphs 1-7 of this Complaint are incorporated by reference as though fully set forth herein.

19.     The '005 patent, titled "Method of Concurrent Multiple-Mode Motion Estimation For Digital Video," issued on February 11, 2003.  A copy of the '005 patent is attached as Exhibit C.

20.     Pursuant to 35 U.S.C. § 282, the '005 patent is presumed valid.

21.     Invented by Koninklijke Philips Electronics N.V., the inventions of the '005 patent were not well-understood, routine or conventional at the time of the invention.  At the time of invention of the '005 patent, different compression algorithms had been developed for digitally encoding video and audio information (hereinafter referred to generically as "digital video data stream") in order to minimize the bandwidth required to transmit this digital video data stream for a given picture quality.  '005 patent at 1:12-17.  Several multimedia specification committees established and proposed standards for encoding/compressing and decoding/decompressing audio and video information.  The most widely accepted international standards have been proposed by the Moving Pictures Expert Group (MPEG).  *Id*. at 1:17-22  Video coding, such as MPEG coding, involves a number of steps.  In general, in accordance with the MPEG standards, the audio and video data comprising a multimedia data stream (or "bit stream") are encoded/compressed in an intelligent manner using a compression technique generally known as "motion coding."  *Id*. at 1:41-45.  More particularly, rather than transmitting each video frame in its entirety, MPEG uses motion estimation for only those parts of sequential pictures that vary due to motion, where possible.  *Id*. at 1:45-48.  In general, the picture elements or "pixels" of a picture are specified relative to those of a previously transmitted reference or "anchor" picture using differential or

"residual" video, as well as so-called "motion vectors" that specify the location of a 16-by-16 array of pixels or "macroblock" within the current picture relative to its original location within the anchor picture. *Id*. at 1:48-55. Computation of the motion vector(s) for a given macroblock involves an exhaustive search procedure that is very computationally intensive. *Id*. at 3:25-39. It was desirable at the time of the invention to improve this process. *Id*. at 3:40-67.

22. The inventive solution of the claimed inventions of the '005 patent provides a system and method for digital video compression, and, more particularly, to a motion estimation method and search engine for a digital video encoder that is simpler, faster, and less expensive than prior art technology, and that permits concurrent motion estimation using multiple prediction modes. *Id*. at 1:6-11.

23. A person of ordinary skill in the art reading the '005 patent and its claims would understand that the patent's disclosure and claims are drawn to solving a specific, technical problem arising in the field of digital video compression. *Id*. Moreover, a person of ordinary skill in the art would understand that the claimed subject matter of the '005 patent presents advancements in the field of digital video compression, and more particularly to a motion estimation method and search engine for a digital video encoder that is simpler, faster, and less expensive than prior art technology, and that permits concurrent motion estimation using multiple prediction modes. *Id.*

24. In light of the foregoing, a person of ordinary skill in the art would understand that claim 1 of the '005 patent is directed to a method for motion coding an uncompressed digital video data stream, which provides concurrent motion estimation using multiple prediction modes. Moreover, a person of ordinary skill in the art would understand that claim 1 of the '005 patent contains that corresponding inventive concept.

25.    Upon information and belief, Vudu makes, uses, offers for sale, and/or sells in the United States and/or imports into the United States products and services such as  H.264 encoders that practice a method for motion coding an uncompressed digital video data stream (collectively the "`005 Accused Infringing Devices").

26.    Upon information and belief, the `005 Accused Infringing Devices infringe at least claim 1 in the exemplary manner described below.

27.    The `005 Accused Infringing Devices provide a method for motion coding an uncompressed (pixel level) digital video data stream.  The `005 Accused Infringing Devices receive input video streams which are then encoded and/or transcoded using at least the H.264 (AVC) standard.  The H.264 standard is a widely used video compression format with decoder support on web browsers, TVs and other consumer devices.  Moreover, H.264 uses motion compressor and estimator for motion coding video streams.

Today, VUDU uses both Limelight and Akamai to deliver their videos to third party devices and encodes all of their content in H.264 for SD, HD and VUDU's proprietary HDX quality. For each quality classification, VUDU is doing multiple encodes which takes advantage of their own in-house adaptive streaming technology for the delivery. SD quality videos are encoded at 1Mbps, 1.5Mbps and 2Mbps. 720p HD content is encoded at 2.25Mbps, 3.75mbps and 4.5Mbps. 1080p HDX videos are encoded at 4.5Mbps, 6.75Mbps and 9Mbps. While VUDU encodes using the H.264 standard, they spend a lot of time to optimize their videos by using an open-source video encoding platform that they have made a lot of modifications to. This is one of the reasons why people who use VUDU, including myself, think they have the best looking videos today. To me, VUDU's 1.5Mbps stream looks much better quality wise, than Netflix's 1.5Mbps stream and has some of the fastest start times I have seen, outside of 1080p streaming on the Xbox 360.

**Source:** https://www.businessinsider.com/everything-you-need-to-know-about-vudu-2010-3

# H.264 Uses Predictive Coding

**0.6       Overview of the design characteristics**

This subclause does not form an integral part of this Recommendation | International Standard.

The coded representation specified in the syntax is designed to enable a high compression capability for a desired image quality. With the exception of the transform bypass mode of operation for lossless coding in the High 4:4:4 Intra, CAVLC 4:4:4 Intra, and High 4:4:4 Predictive profiles, and the I_PCM mode of operation in all profiles, the algorithm is typically not lossless, as the exact source sample values are typically not preserved through the encoding and decoding processes. A number of techniques may be used to achieve highly efficient compression. Encoding algorithms (not specified in this Recommendation | International Standard) may select between inter and intra coding for block-shaped regions of each picture. Inter coding uses motion vectors for block-based inter prediction to exploit temporal statistical dependencies between different pictures. Intra coding uses various spatial prediction modes to exploit spatial statistical dependencies in the source signal for a single picture. Motion vectors and intra prediction modes may be specified for a variety of block sizes in the picture. The prediction residual is then further compressed using a transform to remove spatial correlation inside the transform block before it is quantised, producing an irreversible process that typically discards less important visual information while forming a close approximation to the source samples. Finally, the motion vectors or intra prediction modes are combined with the quantised transform coefficient information and encoded using either variable length coding or arithmetic coding.

**0.6.1       Predictive coding**

This subclause does not form an integral part of this Recommendation | International Standard.

Because of the conflicting requirements of random access and highly efficient compression, two main coding types are specified. Intra coding is done without reference to other pictures. Intra coding may provide access points to the coded sequence where decoding can begin and continue correctly, but typically also shows only moderate compression efficiency. Inter coding (predictive or bi-predictive) is more efficient using inter prediction of each block of sample values from some previously decoded picture selected by the encoder. In contrast to some other video coding standards, pictures coded using bi-predictive inter prediction may also be used as references for inter coding of other pictures.

The application of the three coding types to pictures in a sequence is flexible, and the order of the decoding process is generally not the same as the order of the source picture capture process in the encoder or the output order from the decoder for display. The choice is left to the encoder and will depend on the requirements of the application. The

decoding order is specified such that the decoding of pictures that use inter-picture prediction follows later in decoding order than other pictures that are referenced in the decoding process.

**Source:** H.264 Standard (03-2010) at pp. 3-4



H.264/AVC Encoder [2]

**Source:** https://courses.cs.washington.edu/courses/csep590a/07au/lectures/rahullarge.pdf

28.     The `005 Accused Infringing Devices provide a method for comparing pixels of a first pixel array (e.g., a macroblock) in a picture currently being coded with pixels of a plurality of second pixel arrays in at least one reference picture and concurrently performing motion estimation for each of a plurality of different prediction modes in order to determine which of the prediction modes is an optimum prediction mode.

29.     H.264 uses different motion estimation modes in inter-frame prediction.  These modes are commonly referred to as inter-frame prediction modes, or inter modes.  Each inter mode involves partitioning the current macroblock into a different combination of sub blocks, and selecting the optimum motion vector for the current macroblock based on the partition. The inter-frame prediction modes, or inter modes, can be further categorized by the number and position of the reference frames, as well as the choice of integer pixel, half pixel and quarter pixel values in motion estimation.   The Vudu H.264 encoders concurrently perform motion estimation of a macroblock for all inter-modes and select the most optimum prediction mode with least rate distortion cost.



**Source:** https://courses.cs.washington.edu/courses/csep590a/07au/lectures/rahullarge.pdf, p. 30

30.     H.264 provides a hierarchical way to partition a macroblock, with the available partitions shown in the following two figures. An exemplary inter-frame prediction mode, or inter mode, can be for a macroblock to be partitioned to encompass a 16x8 sub block on the left, and two 8x8 sub blocks on the right.

**Macroblock partitions for inter-frame prediction modes**



**Source:** https://courses.cs.washington.edu/courses/csep590a/07au/lectures/rahullarge.pdf, p. 4

**H.264 provides macroblock partitions for inter-frame prediction modes**



Figure 6-9 – Macroblock partitions, sub-macroblock partitions, macroblock partition scans, and sub-macroblock partition scans

**Source:** H.264 Standard (03-2010) at p. 26

31.     The optimum prediction mode as chosen for the current macroblock is embedded in the compressed bit stream of H.264, as shown in the following two syntaxes.

## Macroblock prediction syntax in H.264

**7.3.5.1   Macroblock prediction syntax**

| | C | Descriptor |
|---|---|---|
| mb_pred( mb_type ) { | | |
| if( MbPartPredMode( mb_type, 0 ) == Intra_4x4 \|\|<br> MbPartPredMode( mb_type, 0 ) == Intra_16x16 ) { | | |
| if( MbPartPredMode( mb_type, 0 ) == Intra_4x4 ) | | |
| for( luma4x4BlkIdx=0; luma4x4BlkIdx<16; luma4x4BlkIdx++ ) { | | |
| **prev_intra4x4_pred_mode_flag[** luma4x4BlkIdx **]** | 2 | u(1) \| ae(v) |
| if( !prev_intra4x4_pred_mode_flag[ luma4x4BlkIdx ] ) | | |
| **rem_intra4x4_pred_mode[** luma4x4BlkIdx **]** | 2 | u(3) \| ae(v) |
| } | | |
| **intra_chroma_pred_mode** | 2 | ue(v) \| ae(v) |
| } else if( MbPartPredMode( mb_type, 0 ) != Direct ) { | | |
| for( mbPartIdx = 0; mbPartIdx < NumMbPart( mb_type ); mbPartIdx++) | | |
| if( ( num_ref_idx_l0_active_minus1 > 0 \|\|<br> mb_field_decoding_flag ) &&<br> MbPartPredMode( mb_type, mbPartIdx ) != Pred_L1 ) | | |
| **ref_idx_l0[** mbPartIdx **]** | 2 | te(v) \| ae(v) |
| for( mbPartIdx = 0; mbPartIdx < NumMbPart( mb_type ); mbPartIdx++) | | |
| if( ( num_ref_idx_l1_active_minus1 > 0 \|\|<br> mb_field_decoding_flag ) &&<br> MbPartPredMode( mb_type, mbPartIdx ) != Pred_L0 ) | | |
| **ref_idx_l1[** mbPartIdx **]** | 2 | te(v) \| ae(v) |
| for( mbPartIdx = 0; mbPartIdx < NumMbPart( mb_type ); mbPartIdx++) | | |
| if( MbPartPredMode ( mb_type, mbPartIdx ) != Pred_L1 ) | | |
| for( compIdx = 0; compIdx < 2; compIdx++ ) | | |
| **mvd_l0[** mbPartIdx **][** 0 **][** compIdx **]** | 2 | se(v) \| ae(v) |
| for( mbPartIdx = 0; mbPartIdx < NumMbPart( mb_type ); mbPartIdx++) | | |
| if( MbPartPredMode( mb_type, mbPartIdx ) != Pred_L0 ) | | |
| for( compIdx = 0; compIdx < 2; compIdx++ ) | | |
| **mvd_l1[** mbPartIdx **][** 0 **][** compIdx **]** | 2 | se(v) \| ae(v) |
| } | | |
| } | | |

**Source:** H.264 Standard (03-2010) at p. 57

## Sub-macroblock prediction syntax in H.264

**7.3.5.2   Sub-macroblock prediction syntax**

| | C | Descriptor |
|---|---|---|
| sub_mb_pred( mb_type ) { | | |
|   for( mbPartIdx = 0; mbPartIdx < 4; mbPartIdx++ ) | | |
|     **sub_mb_type**[ mbPartIdx ] | 2 | ue(v) \| ae(v) |
|   for( mbPartIdx = 0; mbPartIdx < 4; mbPartIdx++ ) | | |
|     if( ( num_ref_idx_l0_active_minus1 > 0 \|\| mb_field_decoding_flag ) && | | |
|       mb_type != P_8x8ref0 && | | |
|       sub_mb_type[ mbPartIdx ] != B_Direct_8x8 && | | |
|       SubMbPredMode( sub_mb_type[ mbPartIdx ] ) != Pred_L1 ) | | |
|     **ref_idx_l0**[ mbPartIdx ] | 2 | te(v) \| ae(v) |
|   for( mbPartIdx = 0; mbPartIdx < 4; mbPartIdx++ ) | | |
|     if( ( num_ref_idx_l1_active_minus1 > 0 \|\| mb_field_decoding_flag ) && | | |
|       sub_mb_type[ mbPartIdx ] != B_Direct_8x8 && | | |
|       SubMbPredMode( sub_mb_type[ mbPartIdx ] ) != Pred_L0 ) | | |
|     **ref_idx_l1**[ mbPartIdx ] | 2 | te(v) \| ae(v) |
|   for( mbPartIdx = 0; mbPartIdx < 4; mbPartIdx++ ) | | |
|     if( sub_mb_type[ mbPartIdx ] != B_Direct_8x8 && | | |
|       SubMbPredMode( sub_mb_type[ mbPartIdx ] ) != Pred_L1 ) | | |
|       for( subMbPartIdx = 0; | | |
|         subMbPartIdx < NumSubMbPart( sub_mb_type[ mbPartIdx ] ); | | |
|         subMbPartIdx++) | | |
|         for( compIdx = 0; compIdx < 2; compIdx++ ) | | |
|           **mvd_l0**[ mbPartIdx ][ subMbPartIdx ][ compIdx ] | 2 | se(v) \| ae(v) |
|   for( mbPartIdx = 0; mbPartIdx < 4; mbPartIdx++ ) | | |
|     if( sub_mb_type[ mbPartIdx ] != B_Direct_8x8 && | | |
|       SubMbPredMode( sub_mb_type[ mbPartIdx ] ) != Pred_L0 ) | | |
|       for( subMbPartIdx = 0; | | |
|         subMbPartIdx < NumSubMbPart( sub_mb_type[ mbPartIdx ] ); | | |
|         subMbPartIdx++) | | |
|         for( compIdx = 0; compIdx < 2; compIdx++ ) | | |
|           **mvd_l1**[ mbPartIdx ][ subMbPartIdx ][ compIdx ] | 2 | se(v) \| ae(v) |
| } | | |

**Source:** H.264 Standard (03-2010) at p. 58

32.     The `005 Accused Infringing Devices provide a method for determining which of the second pixel arrays (e.g., macroblock) constitutes a best match with respect to the first pixel array (e.g., macroblock) for the optimum prediction mode.



Fig. 2.4: Motion estimation. For each MB the best matching block in the reference frame is found. The encoder codes the differences (errors) between the MBs and their best matching blocks. Arrows indicate motion vectors and are labeled by the vector coordinates. In this example the shapes are identical but their colors are slightly larger/darker.

**Source:** B. Juurlink et al., Scalable Parallel Programming Applied to H.264, Chapter 2: Understanding the Application: An Overview of the H.264 Standard, p. 12

      33.    For example, the encoder performs mode decision to select the most optimum prediction mode with least rate distortion cost.

### Macroblock layer semantics

The following semantics are assigned to the macroblock types in Table 7-13:

–  P_L0_16x16: the samples of the macroblock are predicted with one luma macroblock partition of size 16x16 luma samples and associated chroma samples.

–  P_L0_L0_MxN, with MxN being replaced by 16x8 or 8x16: the samples of the macroblock are predicted using two luma partitions of size MxN equal to 16x8, or two luma partitions of size MxN equal to 8x16, and associated chroma samples, respectively.

–  P_8x8: for each sub-macroblock an additional syntax element (sub_mb_type[ mbPartIdx ] with mbPartIdx being the macroblock partition index for the corresponding sub-macroblock) is present in the bitstream that specifies the type of the corresponding sub-macroblock (see subclause 7.4.5.2).

–  P_8x8ref0: has the same semantics as P_8x8 but no syntax element for the reference index (ref_idx_l0[ mbPartIdx ] with mbPartIdx = 0..3) is present in the bitstream and ref_idx_l0[ mbPartIdx ] shall be inferred to be equal to 0 for all sub-macroblocks of the macroblock (with indices mbPartIdx = 0..3).

–  P_Skip: no further data is present for the macroblock in the bitstream.

**Source:** H.264 Standard (03-2010), p. 100

**Mode Decision**



**Source:** https://courses.cs.washington.edu/courses/csep590a/07au/lectures/rahullarge.pdf, p. 30

34.     The `005 Accused Infringing Devices provide a method for generating a motion vector for the first pixel array in response to the determining step.  The encoder calculates the appropriate motion vectors and other data elements represented in the video data stream.



Fig. 2.4: Motion estimation. For each MB the best matching block in the reference frame is found. The encoder codes the differences (errors) between the MBs and their best matching blocks. Arrows indicate motion vectors and are labeled by the vector coordinates. In this example the shapes are identical but their colors are slightly larger/darker.

Source: B. Juurlink et al., Scalable Parallel Programming Applied to H.264, Chapter 2: Understanding the Application: An Overview of the H.264 Standard, p. 12

**Motion Vector Derivation is described below**

1. The derivation process for motion vector components and reference indices as specified in subclause 8.4.1 is invoked.

   Inputs to this process are:

   – a macroblock partition mbPartIdx,

   – a sub-macroblock partition subMbPartIdx.

   Outputs of this process are:

   – luma motion vectors mvL0 and mvL1 and when ChromaArrayType is not equal to 0, the chroma motion vectors mvCL0 and mvCL1

   – reference indices refIdxL0 and refIdxL1

   – prediction list utilization flags predFlagL0 and predFlagL1

   – the sub-macroblock partition motion vector count subMvCnt.

**Source:** H.264 Standard (03-2010), p. 151

**H.264 Encoder Block Diagram**



H.264/AVC Encoder [2]

**Source:** https://courses.cs.washington.edu/courses/csep590a/07au/lectures/rahullarge.pdf, p. 2

35.    Vudu has thus infringed at least claim 1 of the '005 patent by making, using, testing, selling, offering for sale, importing and/or licensing the `005 Accused Infringing Devices, and operating them such that all steps of at least claim 1 are performed.

36.    Vudu's acts of direct infringement have caused damage to Uniloc, and Uniloc is entitled to recover damages sustained as a result of Vudu's wrongful acts in an amount subject to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Uniloc 2017 respectfully requests the following relief:

A.      A judgment that Vudu has infringed the '609 patent;

B.      A judgment that Vudu has infringed the '118 patent;

C.      A judgment that Vudu has infringed the '005 patent;

D.      A judgment that Uniloc be awarded damages adequate to compensate it for Vudu's past infringement and any continuing or future infringement of the '609 patent, the '118 patent and the '005 patent, including pre-judgment and post-judgment interest costs and disbursements as justified under 35 U.S.C. § 284 and an accounting;

E.      That this be determined to be an exceptional case under 35 U.S.C. § 285;

F.      That Uniloc be granted its reasonable attorneys' fees in this action;

G.      That this Court award Uniloc its costs; and

H.      That this Court award Uniloc such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Uniloc hereby demands trial by jury on all claims and issues so triable.

DATED: January 30, 2019

OF COUNSEL:

M. Elizabeth Day
David Alberti
Sal Lim
Marc Belloli
**FEINBERG DAY ALBERTI LIM &**
**BELLOLI LLP**
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel:  650.618.4360
Fax:  650.618.4368
eday@feinday.com
dalberti@feinday.com
slim@feinday.com
mbelloli@feinday.com

Respectfully submitted,

**FARNAN LLP**

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
phone 302-777-0300
fax 302-777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for*
Uniloc 2017 LLC